504 S.E.2d 345

Ex Parte SOUTH CAROLINA EMPLOYMENT
SECURITY COMMISSION, Appellant.

In re MEDICAL UNIVERSITY OF SOUTH CAROLINA,
a Body Politic, Respondent,

v.

Jeanette A. DEAS, Appellant.

No. 2871.

Court of Appeals of South Carolina.

Submitted May 5, 1998.

Decided July 20, 1998.

Rehearing Denied Sept. 18, 1998.

Abel O. Gray and Joseph L. Smalls, Jr., both of Smalls Law Firm, Columbia, for appellant Jeanette A. Deas.

Harold W. Funderburk, Jr., and Romi Y. Robinson, both of S.C. Employment Security Commission, Columbia, for appellant S.C. Employment Security Commission.

Alex B. Cash, of Rosen, Goodstein, & Hagood, Charleston, for respondent.

HEARN, Judge:

This is an appeal from the circuit court reversal of a South Carolina Employment Security Commission decision awarding unemployment benefits to Jeannette A. Deas. Because we find no evidence in the record to indicate Deas was terminated from her employment with the Medical University of South Carolina ("MUSC"), we affirm.[1]

## FACTS

Deas worked for MUSC as the executive assistant for affirmative action and minority affairs from June 1, 1993 until June 30, 1995. Deas testified President Edwards informed her he was not pleased with the programs for which she was responsible and thought she should resign. According to Deas, President Edwards offered her a severance package of six months if she would voluntarily resign from her position. Thereafter, Deas sought legal counsel to negotiate her resignation. With the advice of legal counsel, Deas entered into a voluntary resignation agreement that paid her consideration in excess of $80,000.

After resigning from her position and receiving over $80,000 from MUSC, Deas filed for unemployment benefits. At the hearing, Deas made the unsupported allegation that she signed the settlement agreement under duress, despite the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

fact that she received over $80,000 as consideration for her resignation. There is no evidence that President Edwards had the authority to terminate Deas, nor was there any evidence presented that any type of administrative action had been commenced to terminate Deas.

## STANDARD OF REVIEW

Pursuant to the South Carolina Administrative Procedures Act, a decision of the Employment Security Commission must be reversed where the decision is "[c]learly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6)(e) (Supp. 1997). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached." *Sviland v. South Carolina Employment Sec. Comm'n*, 300 S.C. 305, 308, 387 S.E.2d 688, 689 (Ct.App.1989).

## DISCUSSION

An employee who voluntarily resigns from employment without good cause is ineligible for unemployment benefits. S.C.Code Ann. § 41–35–120(1) (1986). The trial court found the record, reviewed as a whole, contained no evidence Deas was actually discharged from her job at MUSC. Therefore, the trial court found she voluntarily resigned without good cause and was not eligible for unemployment benefits. We agree.

The record shows Dr. Edwards was dissatisfied with Deas and suggested she resign in exchange for a monetary separation package. Dr. Edwards had no authority to fire Deas. Thereafter, Deas hired an attorney and negotiated an $80,000 separation package. Deas admits she was represented by legal counsel throughout the negotiations and her attorney actually helped draft the resignation agreement. There is no evidence MUSC initiated any proceedings to terminate Deas, which would have required a faculty grievance committee hearing. Deas, by signing the resignation agreement and accepting the money, opted out of the protection afforded by the administrative procedures in place at MUSC.

The supreme court reached a similar result in *Richey v. Riegel Textile Corp.*, 253 S.C. 59, 169 S.E.2d 101 (1969). In

*Richey,* the employee voluntarily joined a retirement plan that mandated retirement at age 65. *Id.* at 62, 169 S.E.2d at 102. Once the employee reached 65, the employer forced him to comply with the terms of the retirement plan even though he did not want to retire. *Id.* The court held the employee's acceptance of the retirement plan amounted to a voluntary retirement and therefore he was ineligible for unemployment benefits. *Id.* at 64–65, 169 S.E.2d at 104.

Courts in other jurisdictions have come to similar conclusions. In *Goffi v. Unemployment Compensation Bd. of Review,* 58 Pa.Cmwlth. 422, 427 A.2d 1273 (1981), the dean of the employer college advised the employee, a professor, that the dean was recommending the professor be terminated at the end of the school year. The same day the professor resigned. In finding the professor voluntarily quit, the court held:

> Here the claimant could have continued in his status as a professor and could have awaited the action of the board of trustees, with whom the final decision rested. His resignation, therefore, was premature because there had not been any definitive determination of his status by those with authority to hire and fire.

*Id.* at 424, 427 A.2d at 1274–75. We find the reasoning of the Pennsylvania court to be sound. *See also In re Livingston,* 210 A.D.2d 721, 620 N.Y.S.2d 177 (1994) (although claimant stated he quit because employer threatened to fire him anyway, resignation voluntary where claimant received $10,000, and claimant stated he was tired of fighting with employer); *In re Greene,* 176 A.D.2d 411, 573 N.Y.S.2d 999 (1991) (an employee does not have good cause to leave employment in anticipation of discharge where no definite date for dismissal has been set); *Department of the Navy v. Unemployment Compensation Bd. of Review,* 168 Pa.Cmwlth. 356, 650 A.2d 1138 (1994) (employee who accepted voluntary separation incentive pay in exchange for his retirement in anticipation of the employer's downsize or closure was not eligible for unemployment benefits).

MUSC contends language in the retirement agreement constitutes a waiver of any rights to unemployment benefits. Deas argues S.C.Code Ann. § 41–39–10 (1986) prevents her from waiving unemployment benefits in a resignation agree-

ment. Section 41–39–10 provides "[n]o agreement by an individual to waive, release or commute his rights to benefits or any other rights under Chapters 27 through 41 of this Title shall be valid." Because we hold Deas was not discharged from her position and hence not eligible for unemployment benefits, whether or not she can waive her rights to unemployment benefits is immaterial.

**AFFIRMED.**

HOWELL, C.J., and HOWARD, J., concur.